# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| TAO GROUP HOLDINGS, LLC,     )<br>    )<br>         Plaintiff,     )<br>  vs.     )<br>    )<br>EMPLOYERS INSURANCE COMPANY OF )<br>WAUSAU,     )<br>    )<br>        Defendant.     )<br>_____) | Case No.: 2:21-cv-00382-GMN-NJK<br><br>**ORDER** |

Pending before the Court is the Motion to Dismiss, (ECF No. 22), filed by Defendant Employers Insurance Company of Wausau ("Defendant" or "Wausau"). Plaintiff Tao Group Holdings, LLC ("Plaintiff" or "Tao") filed a Response, (ECF No. 24), and Wausau filed a Reply, (ECF No. 35).

Also pending before the Court is the Motion to Change Venue, (ECF No. 21), filed by Wausau. Tao filed a Response, (ECF No. 25), and Wausau filed a Reply, (ECF No. 34).

Further pending before the Court is the Motion for Leave to File Supplemental Authority, (ECF No. 48), filed by Wausau. Tao filed a Response, (ECF No. 49), and Wausau filed a Reply, 50).

Similarly pending before the Court is the Motion for Leave to File Second Notice of Supplemental Authority, (ECF No. 53), filed by Wausau. Tao filed a Response, (ECF No. 54), and Wausau filed a Reply, 55).

Also pending before the Court is the Motion for Leave to File Third Notice of Supplemental Authority, (ECF No. 56), filed by Wausau.  Tao filed a Response, (ECF No. 57), and Wausau filed a Reply, 58).[1]

Further pending before the Court is the Request for Judicial Notice, (ECF No. 23), filed by Wausau and the Request for Judicial Notice, (ECF No. 28), filed by Tao.[2]

For the reasons discussed below, the Court **GRANTS** Defendant's Motion to Dismiss, Motion for Leave to File Supplemental Authority, Motion for Leave to File Second Notice of Supplemental Authority, Motion for Leave to File Third Notice of Supplemental Authority, the Request for Judicial Notice, and Plaintiff's Request for Judicial Notice.  Finally, the Court **DENIES** Defendant's Motion to Change Venue.

## I.    BACKGROUND

The case arises from the alleged breach of a property insurance policy contract Plaintiff entered with Defendant. (Compl. ¶¶ 3–6).  Tao, a "global hospitality company," purchased a multi-state "all risk" property insurance policy (the "Policy") from Wausau, which insured

---

[1] The Court may grant leave to file supplemental authority "for good cause." *See* LR 7-2(g). "Good cause may exist either when the proffered supplemental authority controls the outcome of the litigation, or when the proffered supplemental authority is precedential, or particularly persuasive or helpful." *Alps Prop. & Cas. Ins. Co. v. Kalicki Collier, LLP*, 526 F. Supp. 3d 805, 812 (D. Nev. 2021).  As discussed in detail below, the Court will apply New York law to insurance policy interpretation as to Tao's New York and Nevada properties, California law to insurance policy interpretation as to Tao's California properties, and Illinois law to insurance policy interpretation as to Tao's Illinois property.  Because the supplemental authority Defendant provides in its various Motions for Leave to File Supplemental Authority, (ECF Nos. 48, 53, & 56), include published and unpublished New York, California, and Illinois federal and state court cases, and because said cases are relevant to the issues in this action, the supplemental authority is helpful in developing the Court's analysis.  Accordingly, the Court grants Defendant's Motions for Leave to File Supplemental Authority, (ECF Nos. 48, 53, & 56), only as to the orders and opinions originating from courts within New York, California, and Illinois, or the respective appellate circuits in which said states reside.

[2] An opposing party consents to the granting of a request for judicial notice if they do not file points and authorities in response to said request. *See Crain v. State of Nevada*, No. 2:16-cv-00406-JAD-PAL, 2016 WL 7422643, at *3 n.26 (D. Nev. Dec. 21, 2016) (subsequent history omitted) (applying LR 7-2(d) to a party's failure to neither question the authenticity of the documents referenced in a request for judicial notice nor object to the Court's consideration of them); LR 7-2(d).  Here, Tao did not file a response to Wausau's Request for Judicial Notice.  Similarly, Wausau did not file an objection to Tao's Request for Judicial Notice.  Accordingly, the Court grants the Requests for Judicial Notice filed by Wausau, (ECF No. 23), and Tao, (ECF No. 28).

Tao's interests in real and personal properties identified under the Policy's covered locations and other locations "owned, leased or rented by" Tao not listed under the Policy's covered locations. (*Id.* ¶¶ 1, 39, 42, 44–45); (*see also* Policy Contract at Cover Page at 63, Ex. 3 to Compl., ECF No. 1-1). The Policy insured against physical loss or damage to covered property and against resulting economic and financial losses. (Compl. ¶ 46); (*see also* Policy Contract at 7, 19, 60, Ex. 3 to Compl.). In addition, the Policy provided a $250,000,000 per occurrence policy limit, with a "Time Element" sublimit of $122,372, 531. (Compl. ¶ 46); (*see also* Policy Contract at 8–9, Ex. 3 to Compl.).

Tao notified Wausau that it suffered direct physical loss or damage at 25 different insured locations in California, Illinois, Nevada, and New York because of the COVID-19 pandemic. (*See* Compl. ¶¶ 76–97, 102–111); (*see also* Policy Contract at 63, Ex. 3 to Compl.). Wausau denied coverage, (*See* Compl. ¶ 99), and Tao filed suit for breach of contract, (*Id.* ¶¶ 119–127), violation of NRS 686A.310 for unfair claims practice, (*Id.* ¶¶ 128–134), violation of the implied covenant of good faith and fair dealing, (*Id.* 30:17–33:16), and a claim for declaratory judgment, (*Id.* 33:17–34:5). Tao seeks compensatory, consequential, extra-contractual, and punitive damages, as well as declaratory relief, requesting the Court to declare that Wausau must pay Tao up to the limits of the Policy. (*Id.* 34:6–24). In response, Defendant moves this Court to dismiss Plaintiff's Complaint for failure to state a claim for which relief may be granted. (*See* Mot. Dismiss ("MTD") 1:18–4:12, ECF No. 22). Wausau also moves this Court to transfer the case to the Southern District of New York. (*See generally* Mot. Change Venue ("MCV"), ECF No. 21).

## II.   LEGAL STANDARD

### a.   Motion to Change Venue

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought."  A motion to transfer lies within the broad discretion of the district court, and is determined on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  "The statute has two requirements on its face: (1) that the district to which defendants seek to have the action transferred is one in which the action might have been brought, and (2) that the transfer be for the convenience of parties and witnesses, and in the interest of justice." *Operation: £Heroes, Ltd. v. Procter & Gamble Prods., Inc.*, 903 F. Supp. 2d 1106, 1111 (D. Nev. 2012) (citing *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1259 (W.D. Wash. 2005) (citation and quotation marks omitted)).

The case-by-case approach has led courts to balance several factors in determining if transfer is appropriate.  Although the relevant factors vary with facts of specific cases, *see Williams v. Bowman*, 157 F.Supp.2d 1103, 1106 (N. D. Cal. 2001), the following factors are generally considered in a transfer motion:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).  The movant bears the burden of showing that transfer is appropriate. *Operation: Heroes, Ltd.*, 903 F.Supp.2d at 1111.

**b. <u>Motion to Dismiss</u>**

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on

which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  "However, material which is properly submitted as part of the complaint may be considered." *Id.*  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

## III.   DISCUSSION

### a.   Motion to Change Venue

Defendant argues the Court should transfer this matter to the Southern District of New York ("SDNY") "for the convenience of the parties and witnesses and in the interest of justice." (MCV 1:24–2:13).  Tao disagrees, arguing that its Las Vegas properties "generate a

significant share of [its] annual revenue" and that much of the "the witnesses, parties, and discovery" will be centered in Las Vegas. (Resp. MCV 3:6–16).

First, the Court considers whether SDNY is a jurisdiction in which the action "might have been brought." The parties do not dispute that SDNY has personal jurisdiction over them. (MCV 5:12–8:9); (Resp. MCV 7:14–16). Tao, however, disputes venue. (Resp. MCV 7:14–20). Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]" 28 U.S.C. § 1391(b)(2). Here, twenty-seven of Tao's properties are listed as covered locations within the Policy, thirteen of which are in New York.[3] (Policy Contract at Cover Page at 63, Ex. 3 to Compl.). Because nearly half of Tao's properties for which it seeks coverage under the Policy for are based in New York, "a substantial part of the property that is the subject of the action" is in New York. (*See id.*). As such, this action "might have been brought" in SDNY.

Next, the Court considers whether the transfer is being made for "the convenience of parties and witnesses, and in the interest of justice" by turning to the eight factors when considering transfer of venue. First, the location where the Policy was negotiated and executed is likely Georgia because the broker listed in the Policy, Beecher Carlson Insurance Services, LLC, lists its address in Atlanta, Georgia as its place of business. (*See* Policy Contract at Cover Page, Ex. 3 to Compl.). Thus, this factor is neutral. Second, "[a]s a general rule, if questions of substantive state law are raised in a particular action, it is advantageous to have those issues decided in a federal court sitting in the state whose substantive law governs." *Operation: £Heroes, Ltd.*, 903 F. Supp. 2d at 1112 (citation omitted). Here, the Policy dictates that New

---

[3] Plaintiff claims that only twenty-five of its properties suffered losses. (Resp. MCV 15:4–5). This lends more credence to the notion that "a substantial part of the property that is subject of the action" is in New York because more than half of the properties for which Plaintiff claims the Policy covers are in New York. (Policy Contract at Cover Page at 63, Ex. 3 to Compl.).

York law would apply to policy interpretation as to Tao's New York and Nevada properties, which constitute fifteen properties.  Since New York law applies to the policy interpretation as to most of Tao's properties under the Policy, New York is likely the state most familiar with the governing law.  Thus, this factor weighs in favor of changing venue.

As to the third factor, Plaintiff's choice of forum is the District of Nevada, (*See* Resp. MCV 13:5–21), so this favor weighs heavily against transfer. *See Galli v. Travelhost, Inc.*, 603 F. Supp. 1260, 1262 (D. Nev. 1985) ("in evaluating a § 1404(a) motion, the citizen plaintiff's choice of a proper forum is entitled to 'paramount consideration,' and the moving party must show that a balancing of interests weighs heavily in favor of transfer.").

As to the fourth and fifth factors, when "at least some of the events giving rise to this lawsuit occurred in [plaintiff's choice of forum], all parties have contact with [that forum]." *Operation: £Heroes, Ltd.*, 903 F. Supp. 2d at 1113.  Although Tao has properties in California, Illinois, Nevada, and New York, Tao argues that a "significant share" of its revenue originates from its Nevada properties, and specifically, the losses at the Nevada properties precipitated Tao's claim. (Resp. MCV 15:2–11).  Thus, the events that gave rise to this action, namely Tao's allegations that the Policy covers losses it sustained in its various properties indicates the parties have contact with Nevada and New York.  Further, Tao does not deny that it has New York-based witnesses, including Michael Rea, Tao's apparent point of contact regarding the Policy, and the person to whom the denial letter was addressed. (*See* MCV 9:3–4); (Letter Denying Coverage at 1, Ex. 2 to MCV, ECF No. 21-3).  However, Tao explains that four of its key national management team members are "located in" Nevada, and that its largest and most prestigious properties are in Nevada. (Resp. MCV 13:5–14:21).  Thus, because Tao's most prestigious properties and key management members are in Nevada, both factors weigh slightly against transfer.

Sixth, generally, the party seeking transfer should demonstrate that potential witnesses will be significantly more convenienced by litigating the case in the venue they seek transfer to. *See Operation: £Heroes, Ltd.*, 903 F. Supp. 2d at 1114.  The Court may place more emphasis on the convenience of key witnesses when considering this factor. *See id.*  Here, Wausau avers it is more convenient to litigate this case in New York because Tao's principal place of business is in New York, while Defendant's is in Massachusetts, which is much closer to New York than Nevada. (MCV 13:20–27).  However, Wausau does not specify any potential witnesses that will be inconvenienced by litigating this matter in the District of Nevada. (*See id.*).  Moreover, a substantial portion of Tao's alleged losses are from its Nevada properties. (*Id.* 15:27–16:1).  Many of its witnesses are in Las Vegas, Nevada, which will likely make it less expensive for Tao to litigate this matter in Nevada. (*Id.*).  Thus, this factor also weighs against transfer.

Seventh, federal courts cannot compel a witness to testify if he or she is not within one hundred miles of where that "person resides, is employed, or regularly transacts business in person." Fed. R. Civ. Pro. 45(c).  The parties' witnesses will likely travel from many states, including California, Delaware, Georgia, Illinois, Massachusetts, Nevada, New York, and Wisconsin.[4]  As such, it is probable that neither this Court nor SDNY could compel many of the witnesses in this case.  Thus, this factor is, at best, neutral.

Finally, parties must demonstrate why evidence is "difficult or costly to transport." *Operation: £Heroes, Ltd.*, 903 F. Supp. 2d at 1115 (citing *Kida W. Holdings, LLC v. Mercedes–Benz of Laguna Niguel*, No. 3:07–CV–00523, 2008 WL 217043, at *4 (D. Nev. Jan. 18, 2008) ("much of the evidence Defendants cite is easily transported to the District of Nevada and

---

[4] Witnesses will likely travel from these states because: (1) Wausau's place of incorporation is Wisconsin, while Tao's is Delaware; (2) Defendant's principal place of business is Massachusetts, while Plaintiff's is New York, and Beecher Carlson is Georgia; and (3) Tao's properties are in California, Illinois, Nevada, and New York. (Compl. ¶¶ 12–13); (Policy Contract at Cover Page, Ex. 3 to Compl.).

Defendants have not shown that they would be significantly burdened by transporting the documents.").  Here, Defendant argues that "most of the potentially relevant physical evidence is . . . in New York." (Reply MCV 8:1–4).  However, Wausau fails to show why this evidence would be "difficult or costly to transport."  Moreover, Tao contends evidence will be in multiple states, and that nothing indicates transporting it to Nevada will be more burdensome than transporting it to New York.  Therefore, because the evidence may likely have the same burden to transport to Nevada and New York, and because Defendant has not demonstrated transporting the evidence will be difficult or costly to transport to Nevada, this factor is neutral.

On balance, the factors weigh against transferring this case to New York.  The most distinctive factors in this case are in the interests of justice, including judicial economy and the convenience of the parties and witnesses.  Judicial economy supports denying transfer because Nevada is Plaintiff's preferred choice of forum, Tao's most prestigious properties and key management members are in Nevada, and many of Plaintiff's witnesses are in Nevada.  Although it may be more convenient for Wausau to litigate in New York, it would be less convenient for Tao.  Section 1404(a) "provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer."  Accordingly, the Court denies Defendant's Motion to Change Venue.

### b. **Motion to Dismiss**

Wausau's MTD concerns whether Tao plausibly and adequately alleges in its Complaint that its COVID-19 losses fall within the terms of the Policy, and whether Wausau's alleged conduct in denying Tao's COVID-19 claim might constitute a basis for extra-contractual liability. (*See id.*).  Wausau's MTD argues dismissal is appropriate for failure to state a claim because the insurance policy requires "direct physical loss or damage," Tao cannot establish

coverage under any provision under the Policy, and multiple exclusion provisions apply to bar Tao's claims. (*See* MTD 8:1–23:28).

In response, Plaintiff argues it sufficiently pleaded its claims for relief because its properties suffered "direct physical loss or damage" as a result of government orders that restricted access to Plaintiff's properties and the presence of SARS-CoV-2 in its properties. (Resp. MTD 1:1–2:10, ECF No. 24).  It also contends the Policy's contamination exclusion provision do not apply because it is not plain, conspicuous, clear, nor readily understandable. (*Id.* 2:11–16).  Further, Tao maintains it has sufficiently pleaded facts to sustain its claim under NRS 686A.310, such as Wausau's prejudgment of barring coverage, which constitutes a failure to implement reasonable standards to investigate and process claims. (*Id.* 2:17–21).  Lastly, Plaintiff includes choice-of-law arguments, averring that New York law applies to policy interpretation as to its New York and Nevada properties, California law applies to policy interpretation as to its California properties, and Illinois law applies to policy interpretation as to its Illinois properties. (*Id.* 4:27–7:4).

The Court will first discuss the choice of law issue and then proceed to the merits of the MTD.

### i. <u>Choice of Law</u>

Tao's claims involve its properties in California, Illinois, Nevada, and New York. Plaintiff agrees that New York law governs policy interpretation as to those locations for which the parties expressly agreed in the Policy to this choice. (*Id.* 4:27–5:3).[5]  However, Tao disagrees as to the applicable law for its California and Illinois locations. (*Id.* 5:3).  The Policy states that "[t]he validity and interpretation of this Policy shall be governed by and construed in accordance with the laws of the State of New York." (Policy Contract at 8, Ex. 3 to Compl.).

---

[5] As the parties agree that, pursuant to the Policy, New York law should apply to the policy interpretation as to Tao's Nevada and New York properties, the Court will do so.

However, Wausau expressly agreed by endorsements to delete this provision as to California and Illinois properties. (California Changes at 1, Ex. 3 to Compl., ECF No. 1-1); (Illinois Changes at 1, Ex. 3 to Compl., ECF No. 1-1).  In its Motion to Change Venue, Defendant contends New York law applies to policy interpretation as to Tao's California and Illinois properties because New York has the most substantial relationship with these properties than any other state. (*See* MCV 10:10–12:21).

Where the Court's jurisdiction relies on diversity, the Court must apply the forum state's choice-of-law rules. *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (citation omitted).  Nevada uses the substantial relationship test "to determine what state's law to apply in a contract case." *Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1253 (Nev. 1998).  Courts must consider five factors to determine "whether a state possesses a substantial relationship with a contract: [1] the place of contracting, [2] the place of negotiation of the contract, [3] the place of performance, [4] the location of the subject matter of the contract, and [5] the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.* at 1253–54 (citing *Williams v. United Services Auto. Ass'n*, 849 P.2d 265, 266 (Nev. 1993)).  Further, "the local law of the state which the parties understood as the principal location of the insured risk during the term of the policy determines the rights and duties under the insurance contract." *Williams v. United Servs. Auto. Ass'n*, 109 Nev. 333, 335, 849 P.2d 265, 266–67 (1993).  Lastly, the transaction cannot contravene "a strong public policy of Nevada." *Consol. Generator-Nevada, Inc.*, 849 P.2d  at 1254 (citing *Williams*, 849 P.2d at 266).

Here, California likely bears the most significant relationship to the interpretation of the Policy as to Tao's California properties; similarly, Illinois likely bears the most significant relationship to the interpretation of the Policy as to Tao's Illinois property.  The Court first addresses Tao's California properties, then it will turn to the Illinois property.

As to Tao's California properties, the place of contracting and of negotiation of the Policy is likely Georgia because the broker listed in the Policy, Beecher Carlson Insurance Services, LLC, lists its address in Atlanta, Georgia as its place of business. (*See* Policy Contract at Cover Page, Ex. 3 to Compl.).  The place of performance of the Policy is split between Massachusetts and California.  The Policy is partially performed in Massachusetts because Wausau's principal place of business is in Massachusetts. (Compl. ¶ 13).  The Policy is also partially performed in California because that is the state where Tao's California properties are situated. (Policy Contract at 63, Ex. 3 to Compl.).  The location of the subject matter of the Policy, however, is California because Tao's California properties are in California. (*Id.*).  The last factor weighs equally between Delaware, Massachusetts, New York, and Wisconsin.  As discussed above, Wausau's principal place of business is Massachusetts; in addition, its place of incorporation is Wisconsin. (Compl. ¶ 13).  New York fits in this factor because it is Tao's principal place of business; in addition, Tao is incorporated in Delaware. (*Id.* ¶ 12).  The raw calculus indicates California, Georgia, and Massachusetts equally have a substantial relationship with Tao's California properties.  However, the Nevada supreme court has explained that "the location of the insured risk embodies a significant criterion in deciding which law governs." *Williams*, 109 Nev. at 335.  Because Tao's properties are situated in California, the Court will apply California law.

As to Tao's Illinois property, just as the California properties, the place of contracting and of negotiation of the Policy is likely Georgia. (*See* Policy Contract at Cover Page, Ex. 3 to Compl.).  The place of performance of the Policy is split between Massachusetts, because Wausau's principal place of business is in Massachusetts, (Compl. ¶ 13), and Illinois, because the relevant property is in Illinois. (Policy Contract at 63, Ex. 3 to Compl.).  The location of the subject matter of the Policy is Illinois because Tao's Illinois property is in Illinois. (*Id.*).  For the same reasons discussed above regarding Tao's California properties, the last factor weighs

equally between Delaware, Massachusetts, New York, and Wisconsin.  Thus, the raw calculus indicates Georgia, Illinois, and Massachusetts equally have a substantial relationship with Tao's Illinois properties.  However, because Nevada places a heavier importance to the location of the insured risk in deciding which law governs, the Court will apply Illinois law as to Tao's Illinois property because it is situated in Illinois.

### ii.  <u>Direct Physical Loss or Damage</u>

Wasau and Tao disagree that the presence of the SARS-CoV-2 virus on Tao's property constitutes "direct physical loss or damage" to trigger coverage under the Policy.  Because different state laws govern the policy interpretation as to Tao's different properties, the Court will engage in an analysis applying the corresponding state laws to Tao's different properties.  To that end, the Court will begin by applying New York law to the policy interpretation as to Tao's New York and Nevada properties.  The Court will then move on to apply California law to Tao's corresponding California properties.  Finally, the Court will apply Illinois law to Tao's corresponding Illinois properties.

As a general matter, the Policy provides coverage over "property, as described in this Policy, against all risks of *direct physical loss or damage*, except as hereinafter excluded or limited, while located as described in this Policy." (*Id.*, Ex. 3 to Compl.) (italics added).  Tao relies upon the following provisions of its Policy to claim coverage: Time Element, Extra Expense, Contingent Time Element, Civil or Military Authority, Ingress/Egress, Attraction Property, and Professional Fees. (*See generally* Compl.).  Under the Time Element provision, a time element loss "[i]s subject to and part of the applicable LIMIT OF LIABILITY that applies to your *direct physical loss or damage* but in no event for more than any LIMIT OF LIABILITY that is stated as applying to the specific TIME ELEMENT COVERAGE and/or TIME ELEMENT COVERAGES AND LIMITATIONS." (Policy Contract at 35, Ex. 3 to Compl.) (emphasis added).  Similarly, the Contingent Time Element provision covers Tao's

1    "actual loss sustained . . . during the PERIOD OF LIABILITY *directly resulting from physical*

2    *loss or damage* of the type insured by this Policy at Direct Dependent Time Element

3    **Location(s)** . . . ." (*Id.* at 41, Ex. 3 to Compl.) (italics added).  Next, the Civil or Military

4    Authority provision covers Tao's

5           actual loss sustained . . . during the period of interruption if an order of civil or
             military authority prohibits access to a covered **location** provided such order is
6           caused by *physical loss or damage of the type insured by this Policy* at a covered
             **location** or within the number of statute miles specified in the LIMITS OF
7           LIABILITY Table in the Declarations.

8

9           (*Id.* at 40–41, Ex. 3 to Compl.) (italics added).  As to the Ingress/Egress provision, it

10   covers Tao's

11          actual loss sustained . . . due to the necessary interruption of [**Tao's**] business if
             ingress to or egress from a covered **location** is prevented, whether or not [**Tao's**]
12          premises or property is damaged, provided that such prevention is a direct result of
             *physical loss or damage of the type insured to property of the type insured*.
13

14          (*Id.* at 43, Ex. 3 to Compl.) (italics added).  The Policy defines an Attraction Property as

15   a property that "[i]s operated by others" and on which "[**Tao**] depend[s] on to attract customers

16   to [**Tao's**] covered **location**." (*Id.* at 40, Ex. 3 to Compl.).  The Attraction Property provision

17   covers

18          [**Tao's**] actual loss sustained . . . resulting from *loss or damage of the type insured
             by this Policy* to property of the type insured at an attraction property . . . during
19          the period of time that:
                    (1) Starts at the time such *physical loss or damage* happens; [and]
20                  (2) Ends when the attraction property is:
                            (a) Repaired or replaced; and
21                          (b) Made ready for operations.

22

23          (*Id.*, Ex. 3 to Compl.) (italics added).  Finally, the Professional Fees provision covers

24   "[**Tao's**] reasonable costs for [**Tao's**] employees or auditors, architects, accountants and

25   engineers whom [**Tao**] hire[s] to prepare and verify the details of a claim from a **covered loss**."

1   (*Id.* at 30–31, Ex. 3 to Compl.).  The Policy defines "covered loss" as "[a] loss to covered

2   property caused by *direct physical loss or damage insured by this Policy*." (*Id.* at 60, Ex. 3 to

3   Compl.) (italics added).  Importantly, these provisions all require "direct physical loss or

4   damage" to trigger coverage. (Policy Contract at 30–31, 35, 40–41, 43, Ex. 3 to Compl.).

5          Wausau primarily argues Tao does not sufficiently allege that its properties suffered

6   "direct physical loss or damage" to trigger coverage under any of the aforementioned

7   provisions. (MSJ 8:11–12, 9:18–22).  Defendant further contends that Tao's allegation that the

8   "presence or potential presence of SARS-CoV-2 at, on, and in insured property prevents or

9   impairs the use of [Tao's] property," also fails to trigger coverage. (*Id.* 11:1–13:8).  The Court

10  turns to interpreting the Policy under New York law.

### 1. <u>New York Law</u>

12         Plaintiff avers it sufficiently pleaded that it is entitled to damages and declaratory relief

13  because the presence of SARS-CoV-2 physically alters surfaces and airspaces in its properties

14  such that it constituted "direct physical loss or damage." (Resp. MTD 10:2 –7).

15         "Prior to COVID-19, New York courts interpreting the policy language of 'direct

16  physical loss or damage' have held that actual physical damage to the insured's property is

17  necessary to trigger coverage and that a mere loss of use of the property is insufficient." *6593*

18  *Weighlock Drive, LLC v. Springhill SMC Corp.*, 147 N.Y.S.3d 386, 392 (N.Y. Sup. Ct. 2021)

19  (citations omitted).  "When presented with claims for monetary losses due to COVID-19 and

20  concomitant government closures, New York state and federal courts construing similar policy

21  language overwhelmingly have concluded that actual physical damage to property is required

22  to trigger coverage; loss of use alone is insufficient." *Id.* (citations omitted).  "In so holding,

23  courts have declined to interpret such language to include 'loss of use' of the property under

24  New York law." *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 507 F. Supp. 3d 482, 487

25

(S.D.N.Y. 2020), *aff'd*, 21 F.4th 216 (2d Cir. 2021) (citing *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 6, 751 N.Y.S.2d 4, 8 (2002)).

Here, Tao does not sufficiently allege any physical loss or damage to its New York or Nevada properties.  It alleges the presence of SARS-CoV-2 physically alters surfaces and airspaces in its properties.  While Plaintiff claims that SARS-CoV-2 droplets "can remain on surfaces for at least 28 days," (Compl. ¶ 68), "there is no physical loss of or damage to property when 'an item or structure . . . merely needs to be cleaned.'" *6593 Weighlock Drive, LLC*, 147 N.Y.S.3d at 394; *see also Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*, 142 N.Y.S.3d 903, 915 (N.Y. Sup. Ct. 2021) ("even if Covid-19 were found at Visconti's premises, it would not constitute the direct, physical loss or damage required to trigger coverage because its presence can be eliminated by routine cleaning and disinfecting.").  As such, Plaintiff fails to sufficiently allege that it is entitled to coverage under the Policy.

For the same reasons, Tao's Complaint fails to state a claim under the Time Element, Extra Expense, Contingent Time Element, Civil or Military Authority, Ingress/Egress, Attraction Property, or Professional Fees provisions because they also require "direct physical loss or damage." *See 6593 Weighlock Drive, LLC*, 147 N.Y.S.3d at 394 (ruling that insurance policy provisions providing coverage if "direct physical loss or damage" occurred did not cover plaintiffs' losses because plaintiffs failed to sufficiently allege that "COVID-19 or the various governmental closure orders caused tangible physical loss or damage to their [properties]"); (Policy Contract at 30–31, 35, 40–41, 43, Ex. 3 to Compl.).

Regarding the Civil or Military Authority provision, although New York City Executive Order No. 100 directed all establishments and entertainments venues to close "because of the propensity of the virus to spread person to person and also because the virus physically is causing property loss and damage," New York case law is clear that COVID-19 does not cause "direct physical loss or damage" to property. (Compl. ¶ 81); City of New York, *Emergency*

*Executive Order No. 100*, https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-100.pdf (Mar. 16, 2020); *6593 Weighlock Drive, LLC*, 147 N.Y.S.3d at 393–94. Moreover, Plaintiff does not sufficiently allege that any civil or military orders were caused by any physical damage or loss of the type covered by the Policy because New York precedent dictates that SARS-CoV-2 does not cause "direct physical loss or damage" to property. (*See* Compl. ¶¶ 80–90). Accordingly, the Court dismisses all of Plaintiff's claims against Defendant as to the New York and Nevada properties.

## 2. California Law

With regard to California law, Plaintiff avers it adequately alleged that the presence of SARS-CoV-2 deprived its California properties of their intended purpose, which constitutes "physical loss." (*See* Resp. MTD 10:25–11:1).

Under California law, "[a] direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.'" *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010) (citing *AFLAC Inc. v. Chubb & Sons, Inc.*, 260 Ga. App. 306 (2003)). Property must be "damaged" to constitute a loss "within the common understanding of the [the] term ["damaged"]." *Id.* at 780. Accordingly, "a detrimental economic impact," such as limited use of property, "unaccompanied by a distinct, demonstrable, physical alteration of the property," is insufficient to claim a "direct physical loss." *Id.* at 779.

"The overwhelming majority of courts have concluded that neither COVID-19 nor the governmental orders associated with it cause or constitute property loss or damage for purposes of insurance coverage." *Barbizon Sch. of San Francisco, Inc. v. Sentinel Ins. Co. LTD.*, 530 F. Supp. 3d 879, 888 (N.D. Cal. 2021) (collecting cases). "'[T]he presence of [SARS-CoV-2]

itself, or of individuals infected with the virus, at [plaintiff's] business premises or elsewhere [does] not constitute direct physical loss of or damage to property.'" *O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*, 512 F.Supp.3d 1019, 1024 (N.D. Cal. 2021) (quoting *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 491 F. Supp. 3d 738, 740 (S.D. Cal. 2020)).

Here, Tao does not sufficiently allege any physical loss or damage to its California properties.  Although Plaintiff claims that the presence of SARS-CoV-2 physically alters surfaces and airspaces in its properties, (Compl. ¶¶ 69, 90), "the presence of [SARS-CoV-2] itself, or of individuals infected with the virus, at [plaintiff's] business premises or elsewhere [does] not constitute direct physical loss of or damage to property." *Pappy's Barber Shops, Inc.*, 491 F. Supp. 3d at 740.  As such, Plaintiff fails to sufficiently allege that it is entitled to coverage under the Policy.

For the same reasons, Tao's Complaint fails to state a claim under the Time Element, Extra Expense, Contingent Time Element, Civil or Military Authority, Ingress/Egress, Attraction Property, or Professional Fees provisions because they also require "direct physical loss or damage." (Policy Contract at 30–31, 35, 40–41, 43, Ex. 3 to Compl.).

Regarding the Civil or Military Authority provision, Plaintiff claims the Office of the Mayor of the City of Los Angeles issued a March 15, 2020, order prohibiting restaurants "from serving food for consumption on premises" to protect life and property but does not provide a functional citation. (Compl. ¶ 77).  Nevertheless, assuming this allegation is true, most California courts agree that "there is no coverage under the Policy for Plaintiff's loss of business caused by the COVID-19 orders." *Long Aff. Carpet & Rug, Inc. v. Liberty Mut. Ins. Co.*, 500 F. Supp. 3d 1075, 1079 (C.D. Cal. 2020); *Protege Rest. Partners LLC v. Sentinel Ins. Co., Ltd.*, 517 F. Supp. 3d 981, 987–88 (N.D. Cal. 2021) ("Every California court that has addressed COVID-19 business interruption claims to date has concluded that government orders that prevent full use of a commercial property or that make the business less profitable

do not themselves cause or constitute 'direct physical loss of or physical damage to' the insured property."). Moreover, Tao does not sufficiently allege that any civil or military orders were caused by any physical damage or loss of the type covered by the Policy because California precedent dictates that SARS-CoV-2 does not cause "direct physical loss or damage" to property. (*See* Compl. ¶¶ 80–90). Accordingly, the Court dismisses all of Plaintiff's claims against Defendant as to its California properties.

### 3. Illinois Law

As to Illinois law, Plaintiff contends it adequately pleaded that government shutdown orders in Illinois imposed physical and financial limits on its properties so as to constitute "direct physical loss." (*See* Resp. MTD 11:24–12:9).

"[T]he overwhelming majority of courts have found no coverage when interpreting whether language in an insurance policy covering losses caused by "direct physical loss or damage" applies to COVID-19. *See Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co.*, 520 F. Supp. 3d 1066, 1069 (N.D. Ill.), *aff'd*, 20 F.4th 303 (7th Cir. 2021). "To the extent that [a court ruling] can be read to hold that a physical loss occurs whenever a property is uninhabitable or unusable for its intended purpose, *regardless of any actual physical damage*, this court respectfully disagrees." *Id.* (emphasis added). Further,

> The critical policy language here—"direct physical loss"—unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage. The words "direct" and "physical," which modify the word "loss," ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure.

*Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 693 (N.D. Ill. 2020) (subsequent history omitted).

Here, Tao does not sufficiently allege any physical loss or damage to its Illinois property. Again, Plaintiff claims that the presence of SARS-CoV-2 physically alters surfaces

and airspaces in its properties, (Compl. ¶¶ 69, 90), but "[t]he coronavirus [and the presence of it] does not physically alter the appearance, shape, color, structure, or other material dimension of the property." *Crescent Plaza Hotel Owner L.P.*, 520 F. Supp. 3d at 1069; *see also T & E Chicago LLC v. Cincinnati Ins. Co.*, 501 F. Supp. 3d 647, 652 (N.D. Ill. 2020) (The "loss of use of property without any physical change to that property cannot constitute direct physical loss or damage to the property."); *VZA, LLC v. Cincinnati Ins. Co.*, ___ F.Supp.3d ___, No. 3:20-cv-01046-GCS, 2021 WL 4489311, at *7 (S.D. Ill. Sept. 30, 2021) ("The presence of COVID-19 on the premises does not constitute a material change or alteration to the property or premises.").  As such, Plaintiff fails to sufficiently allege that it is entitled to coverage under the Policy.

For the same reasons, Tao's Complaint fails to state a claim under the Time Element, Extra Expense, Contingent Time Element, Civil or Military Authority, Ingress/Egress, Attraction Property, or Professional Fees provisions because they also require "direct physical loss or damage." (Policy Contract at 30–31, 35, 40–41, 43, Ex. 3 to Compl.).

Regarding the Civil or Military Authority provision, Tao claims that the Illinois government issued a Gubernatorial Disaster Proclamation on April 1, 2020, because "the circumstances surrounding COVID-19 have resulted in the occurrence and threat of widespread and severe damage, injury, and loss of life and property under Section 4 of the Illinois Emergency Management Agency Act" but, again, does not provide a functional citation. (Compl. ¶ 79).  Even assuming this allegation is true, and assuming Illinois issued the proclamation in connection with an order to close establishments and restaurants like Tao's Illinois property, most Illinois courts agree that SARS-CoV-2 does not cause "direct physical loss or damage" to property.  *See Crescent Plaza Hotel Owner L.P.*, 520 F. Supp. 3d at 1069; *T & E Chicago LLC*, 501 F. Supp. 3d at 652; *VZA, LLC v. Cincinnati Ins. Co*, 2021 WL 4489311, at *7.  Moreover, Tao does not sufficiently allege that any civil or military orders were caused

by any physical damage or loss of the type covered by the Policy because Illinois precedent dictates that SARS-CoV-2 does not cause "direct physical loss or damage" to property. (*See* Compl. ¶¶ 80–90).  Accordingly, the Court dismisses all of Plaintiff's claims against Defendant as to its Illinois property.

### iii.  Exclusions Barring Coverage[6]

Defendant avers that even if Tao adequately alleges it is entitled to coverage under the aforementioned provisions, the Contamination, Loss of Use, Interruption of Business, and Law and Ordinance exclusions in the Policy bar coverage. (MSJ 18:1–19:3, 21:20–22:19).  Plaintiff argues Wausau's argument has no merit because he Contamination exclusion is ambiguous and the Loss of Use and Interruption of Business exclusions "apply only where the Policy does not provide coverage, and only reasonably relate to consequential loss not contemplated by the policy, such as the loss of value in the sale of real estate following a loss." (Resp. MTD 20:3–21:28, 22:1–7).  However, because Tao did not sufficiently allege any of its properties in California, Illinois, Nevada, or New York suffered "direct physical loss or damage," thereby foreclosing the possibility that the Policy covers any of its properties, the Court need not address whether any exclusion bars coverage.

### iv.  Failure to State a Claim

Defendant argues Tao's "breach of contract, implied covenant of good faith and fair dealing, and declaratory judgment causes of action all fail because Wausau's denial of coverage was proper." (MSJ 22:20–23:7).  Plaintiff does not respond to Defendant's argument as to the breach of contract or breach of the implied covenant of good faith and fair dealing claims, but contends that as to it declaratory judgment claim, the Court should not dismiss it because it

---

[6] Although Tao titles one of its headings, "Exclusions Cited By Wausau Are Inapplicable or Waived," Tao does not argue Wausau waived any of the Policy's exclusion provisions. (*See* Resp. MTD 18:6–22:7).  As such, the Court does not address this issue.  Assuming Tao did, however, the issue is moot because the exclusions do not apply as Plaintiff cannot demonstrate "direct physical loss or damage."

"seeks a declaration so that the parties 'may be aware of their prospective rights and duties.'" (Resp. MTD 23:21–24:4) (citing Compl. ¶ 147). However, the Court has already concluded that a plain reading of the Policy does not grant Plaintiff any coverage. Accordingly, the Court dismisses Tao's breach of contract, implied covenant of good faith and fair dealing, and declaratory judgment claims.

### v. Unfair Claims Practice Act under NRS 686A.310

Plaintiff asserts Wausau violated NRS 686A.310(a), (e), and NAC 686A.660(1). (See Compl. ¶¶ 128–134). Defendant asserts that Tao fails to adequately plead its breach of the Unfair Claims Practice Act because Wausau's denial of coverage was proper and because its statements that Tao is not entitled to coverage are not misrepresentations. (MTD 23:8–28). Tao asserts, however, that it is entitled to coverage and that it sufficiently alleges that Wausau violated the Unfair Claims Practice Act. (Resp. MTD 22:8–23:20).

Under Nevada law, it is an unfair practice to misrepresent "to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue." NRS 686A.3190(a). It is also an unfair practice to fail "to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear." *Id.* 686A.310(e). Finally, every "insurer shall fully disclose to first-party claimants all pertinent benefits, coverages or other provisions of an insurance contract or policy under which a claim is presented." NAC 686A.660(1).

Here, insofar as Tao claims that Defendant violated NRS 686A.3190(a) or disregarded Tao's rights in bad faith by denying coverage under the Policy, nothing suggests Wausau acted in bad faith or misrepresented any pertinent facts or Policy coverage when it denied coverage under the Policy. As the Court has already discussed, coverage under the Policy does not exist because Tao failed to sufficiently allege its covered properties suffered "direct physical loss or damage" because of SARS-CoV-2. As such, Defendant neither acted in bad faith nor

misrepresented facts or Policy coverage by deciding coverage consistent with the majority opinion of case law within the jurisdictions where Tao's properties reside.

Second, Tao fails to adequately plead that Defendant violated NRS 686A.310(e). In the Complaint, Plaintiff alleges Defendant violated NRS 686A.310(e) because it took only four business days for Wausau to reply to Tao's notice of loss. (*See* Compl. ¶¶ 98, 131). It is possible that in responding in only four days, Defendant failed to "effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear." *See* NRS 686A.310(e). However, most courts in California, Illinois, and New York have held that SARS-CoV-2 does not cause "direct physical loss or damage" to property such that coverage does not exist under insurance policies with similar language to the language in this Policy. Indeed, Wausau's denial of coverage letter explained it denied coverage because Tao's properties did not suffer "direct physical loss or damage." (Letter Denying Coverage at 1–4, Ex. 2 to MCV). As a result, Plaintiff fails to sufficiently allege that Wausau violated NRS 686A.310(e).

Finally, Plaintiff fails to adequately allege Wausau violated NAC 686A.660(1). Tao alleges that Defendant violated this regulation because by "advising the Tao Insureds that their claim for coverage was unsupported." (Compl. ¶ 132). However, as discussed above, Wausau's denial of coverage letter explained it denied coverage because Tao's properties did not suffer "direct physical loss or damage," which is consistent with the applicable case law. (Letter Denying Coverage at 1–4, Ex. 2 to MCV). As such, Tao fails to sufficiently plead Defendant violated NAC 686A.660(1). Accordingly, the Court dismisses Tao's Unfair Claims Practice Act claim.

### vi.  Tao's Mitigation Efforts

Plaintiff argues it is entitled to damages for mitigating its losses because by suspending operations and preventing SARS-CoV-2 from being in its properties, Tao "avoided actual and

imminent covered property damage." (Resp. MTD 18:2–5); (Compl. ¶¶ 4–5).  It also asserts Defendant waived its ability to argue against Tao's mitigation claim because Wausau failed to address it in its Motion.  (*Id.* 7:12, 17:10–18:5).  In its Reply, Wausau argues it did not waive defending against Tao's mitigation claim by pointing to its Motion where Defendant quoted Plaintiff's claim for mitigation. (Reply MTD 10:12–11:10, ECF No. 35).  It avers that it "explained that the mitigation expenses Tao claims are not covered for the same reason that its business losses are not covered." (*Id.* 11:3–4).

Here, Tao fails to adequately allege it is entitled to damages because of its mitigation efforts.  As an initial matter, Wausau did not waive its ability to defend against Plaintiff's mitigation claim because it raised the issue in its MTD. (*See* MTD 8:4–11).  Next, Tao alleges that as a result of SARS-CoV-2 and closures and suspensions associated with SARS-CoV-2, Tao has "incurred and will continue to incur significant costs to ensure the health and safety of their employees, customers, and everyone associated with or who walks into an insured location." (*See* Compl. ¶¶ 4–6).  Plaintiff asserts the broad insurance under the Policy should cover these mitigation efforts. (*Id.* ¶ 5).  This allegation turns on the existence of coverage for Tao's other claims. (*See* Compl. ¶¶ 4–6).  Indeed, if the Policy does not cover Tao's claimed losses, it makes little sense for the Policy to cover costs associated with claims it does not cover.  However, as discussed above, most courts in California, Illinois, and New York have held that SARS-CoV-2 does not cause "direct physical loss or damage" to property such that coverage does not exist under insurance policies with similar language to the language in this Policy.  As the Policy does not cover Tao's alleged losses, there can be no coverage to mitigate damages.  Accordingly, the Court dismisses Plaintiff's mitigation of damages claim.

### vii.  **Leave to Amend**

Finally, Defendant the Court should not provide Tao leave to amend its Complaint because the Policy does not cover Tao's losses and even if SARS-CoV-2 caused "direct

physical loss or damage," the contamination exclusion bars Tao's claims. (MTD 24:1–13). Plaintiff argues, however, that if the Court grants the MTD, Tao can provide more factual allegations to cure the deficiencies. (Resp. MTD 24:5–16).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

"[S]ince the Policy requires physical loss or damage, and Plaintiffs' claims do not constitute physical loss or damage as a matter of law, Plaintiffs cannot state a valid claim for relief." *Out W. Rest. Grp. Inc. v. Affiliated FM Ins. Co.*, 527 F. Supp. 3d 1142, 1149 (N.D. Cal. 2021); *see also Zebra Techs. Corp. v. Factory Mut. Ins. Co.*, No. 20-cv-05147, 2021 WL 4459532, at *1, *2–3 (N.D. Ill. Sept. 29, 2021) (explaining that because the presence of SARS-CoV-2 does "not constitute 'physical' losses or damages . . . Plaintiff's claims fail as a matter of law"); *Northwell Health, Inc. v. Lexington Ins. Co.*, No. 21-CV-1104 (JSR), 2021 WL 3139991, at *10 (S.D.N.Y. July 26, 2021) (granting a motion to dismiss with prejudice because a plaintiff could not sufficiently allege that their covered property under an insurance policy suffered "direct physical loss or damage" as a result of SARS-CoV-2).

Here, allowing Tao to amend its complaint would be futile because the precedent in California, Illinois, and New York dictate that coverage does not exist under an insurance policy with language such as the Policy in this case.  As discussed above, most courts in each of the aforementioned jurisdictions have held that coverage under an insurance policy requiring

"direct physical loss or damage" does not exist merely because of the presence of SARS-CoV-2 in or on the property. *O'Brien Sales & Mktg., Inc.*, 512 F.Supp.3d at 1024; *Visconti Bus Serv., LLC*, 142 N.Y.S.3d at 915; *Crescent Plaza Hotel Owner L.P.*, 520 F. Supp. 3d at 1069.  As such, Tao would be unable to cure the deficiencies of its Complaint.  Thus, the Court dismisses Tao's Complaint with prejudice.  As there are no remaining claims, the Clerk is instructed to close the case accordingly.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Change Venue, (ECF No. 21), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss, (ECF No. 22), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Request for Judicial Notice, (ECF No. 23), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File Supplemental Authority, (ECF No. 48), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File Second Notice of Supplemental Authority, (ECF No. 53), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File Third Notice of Supplemental Authority, (ECF No. 56), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Request for Judicial Notice, (ECF No. 28), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk is instructed to close the case.

**DATED** this ___8___ day of March, 2022.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT